# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 3327 | **DATE** | 8/2/2004 |
| **CASE TITLE** | Ponce de Leon vs. Offner | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Plaintiff's motion for summary judgment is granted against defendant PW Industries, Inc. as to Count 2 but is otherwise denied (24-1). Plaintiff's motion for leave to file instanter (0-1) is terminated as moot. The case is set for status hearing on 8/9/04 at 9:30 a.m. to discuss the upcoming trial. Trial counsel are directed to appear (Ponce de Leon's California counsel may participate by telephone) and are advised that the Court may need to adjust the scheduled trial date due to a conflict with a scheduled criminal trial.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | AUG 3 2004 | 38 |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT | | |
| OR | courtroom deputy's initials | 2004 AUG -3 PM 3: 13 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

ALEXANDRA PONCE DE LEON,                )
Independent Administrator of the        )
Estate of Dr. Franklin F. Offner,       )
                                        )
            Plaintiff,                  )
                                        )
vs.                                     )   Case No. 02 C 3919
                                        )
LAURENS OFFNER; PLATYPUS WEAR,          )
INC.; and PW INDUSTRIES, INC.,          )
                                        )
            Defendants.                 )
------------------------------------------ )
                                        )
ALEXANDRA PONCE DE LEON,                )
Independent Administrator of the Estate )
of Dr. Franklin F. Offner, and Trustee of )
the Franklin F. Offner Marital GST Trust, )
                                        )
            Plaintiff,                  )
                                        )
vs.                                     )   Case Nos. 03 C 3327
                                        )
LAURENS OFFNER; PLATYPUS WEAR,          )
INC.; and PW INDUSTRIES, INC.,          )
                                        )
            Defendants.                 )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Alexandra Ponce de Leon is the administrator of the estate of her late father, Dr. Franklin

Offner. Dr. Offner amassed a significant fortune by developing medical equipment. Beginning

in 1987, he loaned over $10 million to Platypus Wear, Inc., of which Dr. Offner's son Laurens

Offner was the president, and Platypus' wholly owned subsidiary PW Industries, Inc. In return,

Dr. Offner received a series of promissory notes. Dr. Offner died on May 1, 1999. None of the

36

loans were repaid prior to his death.

After her appointment as the administrator of Dr. Offner's estate, Ponce de Leon commenced the two lawsuits that are the subject of this Memorandum Opinion. The first, Case No. 02 C 3919, is a suit to collect on sixteen notes, all issued by Platypus in 1989 and 1990, for a total principal amount of $3,056,000. The suit is brought against Platypus as the obligor on the notes and against Laurens Offner and PW on an *alter ego* theory. The second suit, Case No. 03 C 3327, is a suit to collect on a single note issued by PW Industries in August 1994, in the amount of $2,006,618. That note is held by the Franklin F. Offner Marital GST Trust, of which Ponce de Leon is the trustee. Case No. 03 C 3327 is brought against PW as obligor on the note and against Offner and Platypus on an *alter ego* theory, and it also includes a claim on a security agreement executed by PW in 1991 which Ponce de Leon contends governs the 1994 note.

In Case No. 02 C 3919, Ponce de Leon has moved for summary judgment on her claim against Platypus on the notes at issue in that case. That motion is denied for the reasons stated below. In Case No. 03 C 3327, Ponce de Leon has moved for summary judgment on her claim against PW on the note at issue in that case, and on her claim against PW and Platypus under the security agreement. That motion is granted as to the claim on the note but denied as to the claim on the security agreement.

**Discussion**

In addressing a motion for summary judgment, the Court does not weigh the evidence or make credibility determinations; that is what trials are for. Rather, the Court views the facts in the light most favorable to the non-moving party, drawing reasonable inferences in that party's favor, and determines only whether there is no genuine issue of material fact and the moving

2

party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); Fed. R. Civ. P. 56(c).

The parties do not dispute the notes' existence, their amounts, or that they are unpaid. Thus unless the obligors are able to show the existence of a genuine issue of fact material to a defense to payment, Ponce de Leon is entitled to summary judgment on her claims on the notes.

## A. Case No. 02 C 3919

Platypus and Laurens Offner[1] offer several arguments as to why Ponce de Leon is not entitled to summary judgment on the 1989-1990 notes at issue in Case No. 02 C 3919. They argue that Dr. Offner forgave, waived, or otherwise excused the debts; that enforcement of the notes is barred by the statute of limitations; and that Ponce de Leon's claims are barred by the doctrines of laches and estoppel.

### 1. Forgiveness / waiver

In support of their claim that Dr. Offner forgave or waived the obligations at issue, defendants offer the testimony of several persons: Laurens Offner, Platypus' outside counsel and its outside accountant, and an outside financial consultant to the company. The gist of this testimony is that in 1990 and 1991, Dr. Offner, concerned about the company's depressed financial condition, expressed an intention to forgive the debts and convert them to preferred stock.

Ponce de Leon argues that this testimony is barred by the Illinois Dead Man's Act, a rule of competency that applies in this case by virtue of Federal Rule of Evidence 601. The Dead

---

[1] Even though Ponce de Leon does not seek summary judgment on her claims against Laurens Offner, establishment of liability on the notes is an essential element of her claims against him. That, presumably, is why Offner has responded to Ponce de Leon's motion.

Man's Act states that with certain exceptions not applicable in this case,

> [i]n the trial of any action in which a party sues or defends as the representatives of a deceased person or a person under a legal disability, no adverse party or person directly interested in the action shall be allowed to testify on his or her own behalf to any conversation with the deceased or person under legal disability or to any event which took place in the presence of the deceased or person under legal disability ....

735 ILCS 5/8-201. This statute likely bars the testimony of Laurens Offner, plainly an "adverse party," regarding his conversations with his father. But Ponce de Leon has failed to show that it bars the testimony of Platypus' outside attorney, accountant, and financial consultant. They are not adverse parties in the case, nor are they persons "directly interested in the action" as Illinois law defines that term. The test of "interest" under 8-201 is whether the person "will gain or lose as the direct result of the suit"; the interest in question "must be direct and immediate." *See, e.g., Hockersmith v. Cox*, 407 Ill. 321, 329, 95 N.E.2d 454, 469 (1950); *Naden v. Naden*, 37 Ill. App. 3d 571, 577, 346 N.E.2d 202, 207 (1976) ("Where the witness will neither gain nor lose by the event of the suit, he is competent to testify."). There is some authority for the proposition that an officer of a corporation that is an adverse party to a suit involving the deceased's representative is subject to the bar of the Dead Man's Act. *See Hall v. Humphrey-Lake Corp.*, 29 Ill. App. 3d 956, 961, 331 N.E.2d 365, 370 (1975). But a corporate employee is not barred by the statute, *see Webb v. Willett Co.*, 309 Ill. App. 504, 33 N.E.2d 636, 638 (1941), and a *former* officer or director of a corporate party is likewise competent to sue. *See First Nat'l Bank of Lake Forest v. Chicago Nat'l Life Ins. Co.*, 3 Ill. App. 3d 769, 774, 278 N.E.2d 833, 836 (1972). There is no indication that any of the other witnesses cited by defendants has any current affiliation with Platypus or PW.

4

The Court finds, however, that the testimony of these witnesses and the other evidence proffered by defendants, even if taken as true, is insufficient to permit a reasonable jury to find that the notes were forgiven, excused, or waived. Dr. Offner at most expressed a willingness to convert the debts memorialized in the notes to preferred stock. But this never occurred; it is undisputed that no preferred stock was ever issued. In addition, it is undisputed that a year after Dr. Offner's purported comments, Laurens Offner re-issued the notes to Dr. Offner; he has testified that this was done so Dr. Offner would have evidence of the obligations for tax purposes should they become uncollectible.

A defense of forgiveness of a note requires proof that the holder of the note forgave repayment of the debt, by clear and definite terms, and received consideration in return. *See, e.g., Miyano Machinery USA, Inc. v. Zonar*, No. 92 C 2385, 1995 WL 32614, at * 1 (N.D. Ill. Jan. 25, 1995) (applying Illinois law; citing cases). Defendants have provided no evidence that any consideration was given to Dr. Offner in return for his purported forgiveness of the notes, and their evidence of intended forgiveness is, under the circumstances, insufficient for a reasonable fact finder to infer actual forgiveness of the debt.

Waiver consists of "the intentional abandonment or relinquishment of a known right" and requires proof of a "'clear, unequivocal and decisive act of a party' demonstrating an intent to waive the known right." *Occidental Fire & Cas. Co. v. Continental Bank, N.A.*, 918 F.2d 1312, 1321 (7th Cir. 1990) (applying Illinois law; quoting *Washburn v. Union Nat'l Bank & Trust Co. of Joliet*, 151 Ill. App. 3d 21, 25, 502 N.E.2d 739, 742 (1986)). Dr. Offner's comments cited as reflecting an intention to give up the debts do not meet this standard. In any event, any claim of waiver or a mutual understanding to forgive the debts is undermined by Laurens Offner's

5

testimony that at Dr. Offner's request, he re-signed and re-delivered the notes to him in mid-1992 so that he could use them to obtain a tax write-off in the future if the debt expired or Platypus filed bankruptcy.

## 2.    Laches / estoppel

Laurens Offner argues that Ponce de Leon should be deemed to be equitably estopped from suing on the 1989-1990 notes because she did not include them in the Dr. Offner estate's tax return. Because it is undisputed that Ponce de Leon was unaware of the notes at the time she caused the return to be filed, Offner has no basis for a claim of estoppel. *See Vaughn v. Speaker,* 126 Ill. 2d 150, 162, 533 N.E.2d 885, 890-91 (1988) (knowing misrepresentation is prerequisite to application of equitable estoppel).

Offner has also asserted a laches defense. He argues that due to Ponce de Leon's delay in pursuing claims based on the notes, he is prejudiced by his inability to offer the testimony of his father. He does not specify exactly what testimony he has in mind, but it is fair to infer that he is making reference to the previously discussed conversations with his father about possible forgiveness of the debts. But even were we to consider Offner's claims about what his father would say (as reflected by Offner's testimony about their conversations), it would not provide a defense to payment, for the reasons previously discussed. A successful laches defense requires a showing of prejudice caused by the other party's delay. *See, e.g., People v. Wells,* 182 Ill. 2d 471, 490, 696 N.E.2d 303, 312 (1998). Here there is none. The defense is insufficient as a matter of law.

## 3.    Statute of limitations

Illinois has imposed a ten year period of limitations on suits based on promissory notes.

The applicable statute provides that "actions on ... promissory notes ... shall be commenced within 10 years next after the cause of action accrued; but if any payment or new promise to pay has been made, in writing, on any ... note ... within or after the period of ten years, then an action may be commenced thereon at any time within ten years after the time of such payment or promise to pay." 735 ILCS 5/13-206.

It is undisputed that the action on the 1989-1990 notes was commenced more than 10 years after a cause of action for nonpayment accrued. Ponce de Leon argues, however, that the "new promise to pay" exception applies. In support of her argument, she relies on the reissuance of the notes in 1992; the inclusion of the debts on Platypus' 1995 income tax return, a copy of which was delivered to Dr. Offner; and the company's delivery to Dr. Offner of its 1992 financial statements, which also included the notes as a continuing obligation.

Ponce de Leon is not entitled to summary judgment, as genuine issues of fact exist as to whether the actions she cites as "new promises to pay" satisfy the requirements of section 13-206. First, it is unclear whether the re-issuance of the notes in 1992 was a "new promise." As best as the Court can determine, what happened in 1992 was that duplicates of the original notes were signed, dated with the original 1989-1990 dates, and provided to Dr. Offner. Laurens Offner has stated that he did this not to renew the debts but rather to provide evidence of the debts to his father for a later tax write-off. Second, the 1995 tax return did not specifically list or identify the notes. A new promise to pay occurs when the debt is "'identified with such certainty as will clearly determine its character,'" *Boatmen's Bank v. Dowell,* 208 Ill. App. 3d 994, 1002, 567 N.E.2d 739, 744 (1991) (quoting *Hurtt v. Steven,* 333 Ill. App. 181, 185, 77 N.E.2d 204, 206 (1948), and there is a genuine issue as to whether the tax return meets that standard. Finally, in

7

response to the motion for summary judgment, Platypus argues that Ponce de Leon has failed to provide evidence sufficient to conclude that the 1992 corporate financial statement sufficiently identified these particular notes. The Court agrees; Ponce de Leon has not offered a copy of the financial statement, but rather has presented only Laurens Offner's testimony about the financial statement, which is not sufficiently particularized to permit the Court to conclude that no genuine factual issue exists on this point.

### 4.    Summary

For the foregoing reasons, the Court denies plaintiff's motion for summary judgment as to Count 2 of her complaint in Case No. 02 C 3919, her claim against Platypus on the 1989-1990 notes.

### B.    Case No. 03 C 3327

Case No. 03 C 3327 concerns an August 20, 1994 note issued by PW to Dr. Offner for $2,006,618.86. This note consolidated three earlier notes and the interest that had accrued on them. By its terms, the 1994 note became due and payable on February 1, 1997. Between February 1995 and May 1997, PW paid about $340,000 on the note. It is undisputed that the balance remains unpaid.

In May 1998, Dr. Offner's wife sold the note to Rick Metcalf, a California resident. Metcalf attempted to transfer the note to the Offner Trust, of which Laurens Offner's siblings and his children are beneficiaries, but a California state court later ruled the transfer was ineffective. On April 14, 2003, Metcalf transferred the note to the Franklin Offner Marital GST Trust. Ponce de Leon, the trustee of the Trust, has sued to collect on the note. She has moved for summary judgment against PW and Platypus on Counts 2 and 5 of her complaint. Count 2 is a claim for

breach of contract based on the note itself; it is asserted against PW as obligor. Count 5 is a claim for possession of collateral secured by a 1991 security agreement between PW and Dr. Offner that Ponce de Leon claims secures the 1994 note. This claim is asserted against PW and also against Platypus, which holds property that Ponce de Leon argues is secured by the 1991 agreement on an *alter ego* theory. The defendants oppose summary judgment, arguing that the claims are barred by the statute of limitations, laches, and estoppel, and that Ponce De Leon has failed to establish that the 1991 security agreement applies to the 1994 note or that *alter ego* liability should apply.

### 1. Laches / estoppel

The laches and estoppel defenses are insufficient as a matter of law. The estoppel defense is the same one that the Court already rejected with regard to the 1989-1990 notes. In support of the laches defense, Laurens Offner says that the delay in enforcing the 1994 note has prevented him from obtaining Dr. Offner's testimony, but he has made no effort to explain what helpful testimony Dr. Offner could have provided. *See* Mem. of L. Offner at 9. The laches defense therefore fails for lack of any evidence of prejudice due to the alleged delay.

### 2. Statute of limitations

The statute of limitations defense is likewise deficient. Defendants contend that the California statute of limitations applies; Laurens Offner argues that the applicable California statute of limitations is four years and that the statute had already expired by the time Metcalf transferred the note to the Offner Marital Trust. Ponce de Leon argues that Illinois' ten year statute of limitations applies. The Court need not resolve the dispute. As Ponce de Leon notes, even were the Court to agree that California law applies, under California law a suit on a note

like this one that is payable at a definite time may be commenced within six years after the due date. *See* Calif. Commercial Code § 3118(a). Another California statute provides that partial payments on a promissory note serve to toll the statute of limitations so long as it had not already expired. *See* Calif. Code Civ. Proc. § 360. This lawsuit was commenced on April 16, 2003, less than six years after the final payment by PW, which was made on May 22, 1997. There is no viable statute of limitations defense.

### 3. 1991 security agreement

As indicated earlier, the 1994 note consolidated three earlier notes. One of these was a note for $900,000 issued by PW to Dr. Offner in October 1991. As part of the October 1991 transaction, PW executed a security agreement in Dr. Offner's favor which stated that "to induce [Dr. Offner] to extend credit to [PW] and to secure the payment of all indebtedness (as that term is defined in Paragraph 2 below) of [PW] to [Dr. Offner]," the company granted Dr. Offner a security interest in all or substantially all of its assets. Pl's Summ. Judg. App'x 11, Ex. 4. Paragraph 2 of the agreement defined "indebtedness" to "include[ ] all debts, obligations and liabilities of [PW] to [Dr. Offner]," and it stated that "[t]he indebtedness secured hereby also includes all sums and expenses ... advanced by [Dr. Offner] for or in connection with this Agreement or any other agreement between [Dr. Offner] and [PW]." *Id.*

PW also relies on the fact that the security agreement does not expressly cover "future advances." Neither party has done a particularly good job of elucidating the issues on this point, leaving it to the Court to try to sort things out on its own. Illinois law disfavors so-called "dragnet" clauses, a term that is evidently used to describe security agreements that cover future advances. Such clauses "will be upheld, however, where no ambiguity exists and will be

interpreted according to the language used. The law presumes the parties intended the agreement to mean what the language clearly imports." *Stannish v. Community Bank of Homewood-Flossmoor*, 24 B.R. 761, 762-63 (Bankr. N.D. Ill. 1982) (applying Illinois law). Under the circumstances, the Court cannot say that the above-quoted description of the indebtedness that is secured by the security agreement is so clear as to apply unambiguously to future advances, as opposed to those debts that may have existed at the time the security agreement was executed (though we do not rule out the possibility of being persuaded otherwise at trial).

### 4.    Summary

For the foregoing reasons, Ponce de Leon is entitled to summary judgment against PW on Count 2, her claim on the note, but her motion for summary judgment on Count 5 is denied.

### Conclusion

Plaintiff's motion for summary judgment in Case No. 02 C 3919 [docket # 69-1] is denied. Plaintiff's motion for summary judgment in Case No. 03 C 3327 [docket # 24-1] is granted against defendant PW Industries, Inc. as to Count 2 but is otherwise denied. Plaintiff's motion in Case No. 03 C 3327 for leave to file *instanter* [docket # 0-1] is terminated as moot. The case is set for a status hearing on August 9, 2004 at 9:30 a.m. to discuss the upcoming trial. Trial counsel are directed to appear (Ponce de Leon's California counsel may participate by telephone) and are advised that the Court may need to adjust the scheduled trial date due to a conflict with a scheduled criminal trial.

MATTHEW F. KENNELLY
United States District Judge

Date:    August 2, 2004

11